IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action No. |
| ) | 12-0054-01-CR-W-NKL |
| DALE PALMER, ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On February 21, 2012, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I.     BACKGROUND*

On February 21, 2012, defendant waived indictment and an information was filed charging defendant with one count of mail fraud, in violation of 18 U.S.C. § 1341.

Judge Laughrey referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. On February 21, 2012, defendant appeared before me with his counsel, Assistant Federal Public Defender Ronna Holloman-Hughes. The government was represented by Assistant United States Attorney Daniel Nelson. The proceedings were recorded and a transcript of the hearing was filed on February 22, 2012 (document number 4).

*II.    AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties,

the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. United States v. Torres, 258 F.3d at 795. Applying the Peretz holding and the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing United States v. Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of

2

greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting United States v. Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III.   FINDINGS OF FACT

1.   On September 21, 2012, an information was filed charging defendant with one count of mail fraud, in violation of 18 U.S.C. § 1341 (Tr. at 7-9).  Defendant understood the charges in the information (Tr. at 9).

2.   The statutory penalty for mail fraud is not more than 20 years in prison, not more than $250,000 fine, not more than three years supervised release, a $100 special assessment, and restitution (Tr. at 10).  Defendant understood the statutory penalties (Tr. at 10).

3.   Defendant was advised of and understood the following:

    a.   That he has a right to a trial by jury of at least 12 individuals and

3

Case 4:12-cr-00054-NKL   Document 7   Filed 02/23/12   Page 3 of 8

that their verdict must be unanimous (Tr. at 10);

  b. That he has the right to assistance of counsel throughout the trial (Tr. at 10-11);

  c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 11);

  d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 11-12);

  e. That defendant would have an opportunity to subpoena witnesses to testify on his behalf (Tr. at 12);

  f. That defendant would have an opportunity to testify on his own behalf, but that he would not be required to and the jury would be instructed that they could not draw an adverse inference if he chose not to testify (Tr. at 12); and

  g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 13).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 13-14).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 14). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 14). Defendant stated that he understood (Tr. at 14).

6. Defense counsel had full access to the government's file and agreed that her review of the evidence and her independent investigation confirmed that the facts

4

were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 14, 18).

7. The government made the following factual basis for the crimes to which defendant intends to plead guilty:

> During the time alleged in the Indictment, Mr. Palmer owned, operated and conducted business as HOAS or Homeowner Association Services with the headquarters here in Kansas City. Essentially his business managed money and accounting services and so forth for condo and homeowners' associations located throughout Missouri, Kansas, Illinois and Wisconsin. And in March 2011, Mr. Palmer's business collapsed, HOAS collapsed and $751,302.56 was missing from the accounts of 32 of Mr. Palmer's clients which were homeowners' associations. . . . [I]n the months leading up to that collapse, Mr. Palmer altered account statements that HOAS provided to the homeowners' associations in order to make it appear that HOAS was financially sound when it was not. And when it collapsed, those 32 homeowners' associations suffered the loss in the amount of about $750,000. The FBI interviewed Mr. Palmer on August 5th, 2011. Mr. Palmer freely admitted that he had mingled, mixed and taken monies from one account and placed them into another for the purpose of covering the expenses of one homeowners' association with money from another homeowners' association, which he admitted that he hid from the homeowners' association, including by devising false accounting statements that he used, using account statements from the actual bank accounts and then he would devise altered bank statements, so that when he sent them to the homeowners' association, it appeared that they had that money still under management, that they expected to have on deposit when, in fact, some of that money had been used for other purposes, which they obviously did not want the money to be used for, that is, for the expenses of other homeowners' associations that were unrelated to them. Mr. Palmer admitted that HOAS had accounts at three banks, Bank of America, Street Smart and US Bank. And Mr. Palmer was the only signatory. He admitted that from July 2009 to March 2011, his business experienced serious cash flow problems, so he commingled the funds even though he believed that it was a crime to do so. He basically explained that he was a very poor money manager and he could not legitimately resolve his cash flow situations. So, he stated that the funds that he pulled out of the bank accounts were used for HOAS' expenses or were placed into the accounts of other homeowners' associations. Mr. Palmer started preparing false statements for all the homeowners' associations around July of 2009, and he continued to prepare such false statements until HOAS closed in March of 2011. Mr. Palmer never allowed the homeowners' associations to see their actual direct bank statements and instead had them shipped to one of HOAS' multiple offices. Mr. Palmer essentially explained that he had overexpanded his business and that it

5

wasn't working out, but he was slow to admit that. Specifically, in furtherance of this scheme, Mr. Palmer admitted that on or about May 2nd, 2011, he caused to be sent through the United States Mail an April 2011 bank statement from US Bank relating to an account that Palmer held in the name of Concord Oaks Homeowners' Association. This statement was sent to Palmer at his business address in Kansas City, Missouri, in the Western District of Missouri. By having such statements sent directly to him and not to the homeowners' association, Mr. Palmer was able to keep the homeowners' associations from learning that he was improperly siphoning money between accounts and using some of the money to pay for HOAS's expenses and for the expenses of other businesses. On or about that date outlined in the Information, which is incorporated by reference in the factual basis on page 7 at the Paragraph 3, Mr. Palmer admits that that mailing, that specific April 2011 account statement was, in fact, sent through the United States Mail from Minnesota to Kansas City, in the Western District of Missouri, in furtherance and for the purpose of helping to execute the scheme.

(Tr. at 15-17).

8. Defendant was placed under oath (Tr. at 18) and admitted the following:

Defendant owned and operated Homeowner Association Services Company, it was headquartered in the Western District of Missouri, he managed operating accounts for the homeowners' associations, and he performed administrative tasks. Between July 2009 and March 2011, he was paying expenses for his business out of the homeowners associations' accounts. He knew it was wrong, he did nit knowingly and intentionally, and the loss to the associations was approximately $742,000. On May 2, 2011, he caused a mailing to be made from Minneapolis, Minnesota, to Kansas City, Missouri, involving a bank statement, (Tr. at 19-21).

9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 22-29). In addition, I went over the entire plea agreement with defendant during the change-of-plea hearing (Tr. at 22-29).

6

10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 29-30).

11. Defendant is satisfied with the advice and guidance he has received from Ms. Holloman-Hughes (Tr. at 30). There is nothing she has done that defendant did not want her to do (Tr. at 30). There is nothing she has failed to do that defendant wanted her to do (Tr. at 30).

12. Defendant is 53 years of age (Tr. at 30). He graduated from college (Tr. at 30). Defendant has no mental health or substance abuse issues (Tr. at 31). Defendant was not under the influence of any drug or alcohol during the change-of-plea hearing (Tr. at 31).

13. Defendant tendered a plea of guilty to the information (Tr. at 33).

## IV.   *ELEMENTS OF THE CHARGED OFFENSES*

The essential elements of mail fraud are: (1) defendant voluntarily and intentionally devised or made up a scheme to defraud another out of money, (2) defendant did so with the intent to defraud, and (3) defendant used, or caused to be used, the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme. Eighth Circuit Model Jury Instruction 6.18.1341.

## V.   *CONCLUSION*

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

7

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in the information.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offense charged in the information.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 23, 2012

8